We're going after this third case, which is number 12-2208 Gwynn et al. v. City of Philadelphia et al. Mr. Purcelli and Ms. Istvan. After this third case, we'll take a very short recess before the low case are forth. Hang on for one second. We'll just get the Take your time Whenever you're ready, thank you your honors I'm Brian Purcelli for the appellants. If I may, I'd like to reserve three minutes for a rebuttal Granted. Thank you, your honor. Your honor. I Believe that the the real issue in this case really is the special needs case under the Fourth Amendment Although I do want to point out that raised in the marriage. I just start with the the rule 36 issue Yeah, I mean because Very shortly after The other side did not file a Response to your request for admissions and my guess is they would say because there were some kind of discussions taking place at that point When those discussions fell through very shortly after the time period elapsed they asked the court To allow them to file late the court granted it We have we normally try I mean in this circuit, especially we try to get to the merits And I don't see any great prejudice to your side for a few days delay I Don't think that's an argument that really flies With us your honor. The reason that was raised in that particular scenario was because with the same judge in a different case Occurring at the same time as this one Where I was on the defense side, I tried to amend an answer to allow an estoppel defense The The amendment was denied because they said that the plaintiff had relied So it was it was really More directed at if the facts for not allowing an amendment is a prejudice because you've relied on something Then it was merely presenting the judge back with in this situation You would not allow me to amend an answer to to add something that I couldn't have planted an answer because we didn't know from It's so much here about that. It was because it was more Something ongoing with that particular district court judge up here The argument was preserved only to show that look, you know, the fact that this the fact that settlement with the city falls Apart does not really establish good cause And really that's why I didn't want to focus on that because Speaking with my counterpart. We kind of looked at This being a new issue this needs issue Which this court really only looked at in the model case in 2012 and that was a drug case That was you know, the testing of drugs under that policy and this this does not fall in that category to special needs Before I get to the special needs situation, which of the four Supreme Court cases that we've talked about I just do want to note that there was a qualified immunity argument made in The merit briefs the qualified immunity defense, although pled as the defense Was not argued by the appellee below wasn't talked about by the district court and there was no cross-appeals I don't really before you even get there. However here You've got a complaint to the police department about somebody in effect taking money from him on a stop on a street and the department Wouldn't you agree the department needs to investigate that they do and and that's the special needs situation the Supreme Court talked about they talked about that in Skinner O'Connor and the O'Connor case we talked about so what what should the Police department have done here with respect to officers when and Ryan With it have done with written wine There is a direct to seven that does establish how these warrantless searches are supposed to be done And then as we know from the Ashcroft Kate the Supreme Court, we know from O'Connor the Supreme Court case We know from Skinner the Supreme Court case and we know for the Ontario case the Supreme Court case They've talked about these warrantless warrantless searches for the special needs But my question is what should what should the department have done with to investigate? The claim that somebody was shaken down for $400 or whatever it was. Well, they can ask the officers Come back they can go through their investigative stop and have to follow their procedures What procedures were Directive seven is the only direct police department has for warrantless searches and and discovery had shown That that directive applies equally to the police as it does the civilians and their directive their standards That's what the Supreme Court saying is when you look at these warrantless special needs situation You gotta look at the standards of the employer because if the employer doesn't have them It's a probable cause standard and not a reasonable standard, which is what the district court said below I'm applying a reasonable standard or here. There was a specific but but isn't there the standard a bit different here? Why don't we just? Adopt what the Seventh Circuit did in Dribble in Dribble Dribble looked at the qualified immunity will turn around and says yeah You can search but you need your probable cause but but the court said that the judiciary should defer Whenever possible consistent with the Constitution to the superior expertise of law enforcement professionals in dealing with their respective personnel All right And in this particular case the specific way that the police department had decided how it was going To deal with these types of allegations Was to have without a warrant Was to have probable cause or consent well, no, well people does not is People does not say that that's the only way I mean if it's if it's Consistent with the Fourth Amendment It's it passes muster run to Dribble and the facts of that case are almost identical to a case We have here they are and they also looked and adopted other matters Which we look at the seizures itself as to whether it was reasonable or not And they said we kind of look to see whether or not the officers were free to go in this particular case The fact here they were they were not They were in fact, that's a claim dispute. Well, they claimed that they were afraid if they left they would lose their job There's also testimony from sergeant feed that they were not free to go about Whether a reasonable officer under those circumstances would would Would think that he had he was staying because of his job or he was staying because he thought he was under Fourth Amendment compulsion. I agree. You're talking the subjective from the objective standard the subjective standard We're not saying because they were intimidated I want to focus on the objective standards that were being used by the courts to determine whether or not The Dribble test could be met in this particular case They said they were concerned With whether or not the officer was allowed to go to the bathroom alone or not whether he's being washed and in this particular you don't want him to go to the bathroom alone because It defeats the whole purpose of having their cool having them cool their heels while you're waiting for internal affairs I mean, but isn't it isn't it true that in this case the police were acting in their capacity as employer Rather than as law enforcement officer Know that that's not correct either and that's part of my argument because they concede in Depositions that it was an IEP Investigation lieutenant Gibbs was turned over them, but it was not lieutenant Gibbs that was doing all this It was the four district commanders who should not have been doing this once it became an IEP Well, it regardless of who did it was a search that occurred Broader and scope then was permissible under the O'Connor case. Yes, it was and that's correct This is beyond what was necessary given the facts that were presented It's beyond the scope because the first thing you have to do is you have to look to see whether or not they actually believe They were gonna find something and consistent to all the defendants testimony was they never believed they were gonna fight Find any money because they didn't believe they ever took it So the reasonableness of the search is it as a fact issue if you didn't believe you'd find it and you didn't believe they Took it. Why were you telling them to empty their pockets lift their pants? Well, because you have to go through all that for their own protection You've got it. You've got to demonstrate to the putative plaintiff who's going to sue the police department for stealing his money that He was wrong. He's a false accusation if you don't do the Investigation to to demonstrate that the officers didn't have the money on their person Then you've got a live case against the officers brought by this complainant You have to start with the scope. That's what the law says. You got to start from the very beginning Which means either you had to read you had to have a reasonable basis or probable cause Well, you're really had a reasonable basis to search to look into the matter, correct? Yes, your brief says it if there's a if there's so the question is whether the quote search that they did was Was was reasonable Concerning the complaint that they received. How was the search that they perform? broader in scope than necessary to Solve the answer to the complaint that they receive They didn't even know how much money was taken when they did the search I don't know if they were looking for ten dollars two dollars four hundred five hundred or six hundred dollars I know but they knew that they that the complaint was that He they stole money What did they do which was broader in scope that was necessary in order to Verify or to or to show that it's not you know to answer the issue failed to follow their directive seven Directive seven specifically the directive is not part of the Fourth Amendment that that might be good a policy But we're concerned with the Fourth Amendment here. Not whether they followed the perhaps if they followed the directive there would be no case here But the fact that they didn't does it make it automatic a fourth amendment? So my the only hang-up I'm having with this case is I know they had to do something And you acknowledge that in your and they did they called IAB. Okay, and they performed The search that they perform was that broader in scope in any way or more? intimidating or Folsom in any way other than was needed to refute or to verify the complaint Yes and and they They first ordered them in and to remain there and didn't tell them until the search was about to start why they were even there the testimony and following the trouble cases and the four Supreme Court case says you don't get past the warrantless search area and into the special needs unless you can fit into the standards and first thing you look to the first thing you look to before you can get to the search is Is there a standard if there's a standard we're gonna look at the reasonableness if there's no standard in terms We look at probable cause in Ashcroft Ashcroft in 2012 repeated that but in terms of getting to that standard the issue that we have here is when a police officer when as a police officer seized by his employer during an internal investigation and Dribble has said that there is an added element and dribbles followed by Pennington of the Sixth Circuit and Aguilera of the Ninth Circuit There's no case that I see Really on your side here. It says that in that context There is you have to have deference to the internal procedures of the police And we don't have any problems with the internal procedures Because the case law all the cases Say that if you have a procedure and you follow it We're going to look at the reasonable standard and we had a procedure and they admit they didn't follow it and the Supreme Court Case the Supreme Court Ashcroft case in 2012 Said if you don't follow your own standards, essentially, you're back to the probable cause standard. Well, no, no, that's look we can't conclude We agree with you if they would have followed the standard that would have been hunky-dory But you can't from that reasoning Conclude that if they don't follow the store the their procedure, it's automatically a fourth of them in violation I can conclude that based on the Supreme Court's Ortega and Ashcroft 2010 and 2012 they don't I don't think that's the holding of those cases that if they don't follow the standard Then we're we're into the open question as to what they what they did and whether it was beyond what was necessary for what was Something was necessary and if they did something that was beyond what was necessary To refute or to verify the complaint then you're in Fourth Amendment territory So the question here is what did they do to these gentlemen? Beyond detaining them telling him to empty their pockets the socks and so forth. What did they do which was? beyond the scope of Trying to verify or refute what would occur they held them in a room would not give them the free liberty to go to use their phone They wouldn't even let them go get a drink. In fact when Ryan tried to get a drink They would not let him leave in fact FIDA sergeant FIDA testified and it's noted in the record That he would have accompanied them everywhere would not have let them go alone They weren't allowed to even go to their locker after they were released I mean he had to accompany him to make sure that if they did have money on them that they didn't get liberated or They they testified they never believed they had the money You can't get past their testimony, which is one of the reasons that there were so many facts in dispute here that are that are genuine the things that we're talking about that summary judgment really shouldn't have been entered whether They should have established those facts but whether they believe that it was the complaint was true or not did they have to go through the The motions in order to verify whether it was it wasn't yes Because the courts said that you have a standard you got to follow if you don't it's a higher standard under the Fourth Amendment They have a standard they admit they didn't do it. So it went for the higher standard I agree. There is a special needs it falls into the special needs But if it's going to fall into the special needs of the Fourth Amendment, you have to follow the tests Otherwise you have to go back to the Fourth Amendment and even in Ashcroft in 2012 a public employee case they said public Employees by the very virtue of being government employees do not give up their Fourth Amendment protections the special needs Situations falls into two categories safety, which is the Skinner case Which which is similar to the model case that this court dealt with which is drug testing for safety And then we get into that other area All right, let's hear from mrs. Vaughn and then we'll get you back on rebuttal I May have placed the court. I'm Janus fan and I represent the city and I represent the supervisory defendant police officers in the case I could start with a number of things but I'll pick up where just let me start with some fact What did the supervising officers know about the complaint that had been made at the time they conducted the search? Or asked them to turn their pockets inside out, etc, etc No, there was a call to the station, I believe that mr. Artist had accused Officer Gwynn of stealing $500 stealing $600 When when he had frisked him and I believe that was that that was all they knew. Yes So would any complaint be sufficient to justify a search or what is needed internally? For them to have a search done of the of these two officers With respect to this particular search judge. Yeah, you got to be for example, you could have called. Mr Artisan come on in give us some more facts And developed it further You've got some well, I guess you had mr. Artist and his brother His brother also call in or did they speak with his brother at some point? I know that I believe that they that they call the FBI and I believe that the mother at some point or the aunt Had also called and someone had called the FBI as well Someone had called IEB and someone had called the FBI But but the bait but the basic report was all the same mr. Artist had accused officer Gwynn and Mr. Artist had also accused officer Gwynn on the scene right away of having taken the money But regardless the accusation was all the same. You took $500 from me $600 from me But whatever the amount was is there a disputed question of fact here as to whether the two officers? I felt as though they were not free to leave Fearing Adverse employment action or that they were felt they were not free to leave you as they were under arrest Is there I mean, that's their position they thought He thinks that they were under compulsion to stay by reason of The so isn't that a question of fact that has to be resolved by a jury if that's a their position There's no material. There's no material dispute with respect to whether there's a seizure though judge Callan, and that's the issue here Because dribble and Aguilera and Pennington have held that it's not material whether you fear job loss relying upon Mendenhall and how Mendenhall defines a show of authority and relying upon the custodial interrogation cases and relying upon Delgado They've held that fear of job loss is not sufficient to constitute a show of authority with respect to a seizure Because the question is not whether you feared to job loss and you didn't leave Because you feared the job loss arising out of your voluntary relationship with your employer Rather the question is whether you were you somehow Feared be that you were you thought that you would be physically prevented from leaving the room whether there was a show of authority That caused you to reasonably believe that you would be physically prevented from leaving the room All right Well, this is a question of fact that a jury should resolve they claim they were not allowed to leave you stay were under arrest You say that they were being detained for employer? Position that there had been a complaint that they were trying to check out is there not a question of fact as to whether objectively they had the reason to believe that they were under arrest or As your claim that they were really being detained for a proper employment check I have two answers on that point judge Callan I don't believe there's there's subjective testimony on that point and I don't believe there's objective testimony on that point and you need objective Testimony on that point. Okay. Well, there's a generally they say that they thought they were under arrest I don't believe there's testimony on that point They're subject their only subjective testimony on that point is they believe that they were ordered to this Is that they believe that they were instructed to stay there until I a be arrived? And that those were instructions from their superior officers and and so it all relates to the employment relationship I don't believe there's any testimony that they thought they were under arrest or that they would be physically prevented from leaving They believe that they had orders and if and if if there is testimony in the record somewhere that they thought that they would be Physically prevented from leaving I'm not aware of that testimony And even if there is such testimony that that that belief wasn't reasonable under Dribble and under Aguilera You can see though that there's a dispute of material fact As to whether they consented to the search. Yes. I do can see that much that there's a that there's a that there's a Dispute of that there's a dispute of fact, but that but that's not material because the search was reasonable under the circumstances. Well, how The appellants position is the search was not reasonable Once you you you fail to follow the directive that was set up for this type of thing Then you're no longer Then you're you've abandoned reasonableness and you've gone into a Fourth Amendment search when you fail to use the Directive that you set up to do this very thing. I Don't agree with his position and I'll just count and I agree with you There's a ton of law that states that our failure to follow our internal directives doesn't constitute a constitutional violation I'm not aware that that's the holding of O'Connor And in fact, that's there's there's oppositional holdings to that effect in a lot of cases that our failure to follow our internal directives doesn't establish that and This court cited a lot of cases that the special needs doctrine Applies in these cases because we should have deference Deference applies tenfold and in a police case. I believe we're we're trying to balance a right to investigate Police misconduct and I would invite the court's attention to the being that case that specifically says there's a right for the police to investigate accusations of citizen misconduct and we're balancing that against police rights and where there's an internal police invest investigation of police misconduct or an internal investigation of workplace misconduct as O'Connor would say as opposed to a criminal investigation we get some leeway and while Police don't have watered-down Constitutional rights we get a little bit of leeway when we're doing an internal investigation We send police out there with guns and badges and we ask citizens to submit to their authority as mr Artists did and therefore they have to give a little bit of leeway and being that case is all about that And that's why I'm being a the police department got a little bit of leeway when they had a police lineup with 62 officers Some of whom weren't were suspected of misconduct and some of whom weren't and that's why we get a little bit of leeway here the On the seizure issue that there's there's some evidence That could allow someone to infer here that there was a seizure Supervising officers remained with officers when and Ryan during the entire time they were at the station. They waited When and Ryan were instructed to turn off their cell phones The supervising officers spoke to them in a stern manner You know, they're in charge and that ultimately Gwynn and Ryan were searched Judge Amber, I believe under the totality of the circumstances test, which is what dribble sites Applies here and it's and again, it's an objective test Judge Hardeman spoke to this that That the reason that you do things like accompany people to the bathroom and ask people to turn off their cell phones is not to Convey to them that they're detainees, but it's for security purposes. You don't want them getting their story straight You don't want them hiding the evidence things like that It's not to convey to them that they're detainees and if you look at the totality of the circumstances in this case You simply couldn't infer from the circumstances that we were conveying the message that they were going to be physically preventing from leaving No one showed their weapons here. They were sitting in an office. They weren't in an interrogation room They weren't threatened with arrest the doors were at the office weren't locked They kept their guns and their badges. They were invited to watch television They were offered drinks Most important they went home in the evening They were again They were never actually how long was the detention here at the station the detention with respect to my clients was only an hour I went about an hour IEB showed up and took over the scene and it was IEB who Controlled the scene then and went and said we're leaving and we're going to interrogate For the entire time that they were at the station. It was four hours because IEB came back and then said you can leave I did want to address also judge Callan's question as to the breadth of the search because I don't think there's any question that the That the breadth of the search was reasonable Given Supposing what a script search the officers without a bit reasonable. I Believe that the school cases would probably say no and and I would go that far here Of course, but right and and I think that's that's that's the issue Is that we only is that we limited the search to outer clothing. We didn't touch the officers We asked them to show the outer parts of their clothing should show their pockets themselves The search was very limited. The search was very respectful and it and again, it was it was justified at its inception, which is the first part of the special-needs doctrine because it was it was the two it was only the two officers who were suspected and I cited the cases where Personal effects were searched and there wasn't even individualized suspicion suspicion in those cases Which are circuit cases and in fact Safra versus Redding, which is a Supreme Court case the the court in passing implicitly Suggested that that would be acceptable in a school case And therefore I would suggest that in this case that we certainly didn't go beyond the breadth of what's acceptable in a reasonableness when they when they ultimately Did the search did they suspect misconduct at that time or or what? What was the reasoning as to why they did the search? I? Believe it's undisputed that they told the officers if you show me now that you don't have the money Before you leave the scene it will go well for you. And and in fact, that's what happened They showed him that they didn't that they showed him that they only had 20 and $30. I believe each of them respectively on their persons and the captain documented that and all this there's a bit of tension in terms of the briefing and What you said to the District Court, I thought you said to the district court They they did this or the search because they thought it would demonstrate in fact They didn't have anything on them and they would be exonerated Whereas be you're saying before us that you did the search because you suspected that there might be misconduct And that seems to be intention with the statement that you made to the district court in other words Hey, I think you guys are okay Just show us and like life will go easy and you can get out of here. That's one thing or Hey, we're going to search you because we have reasonable basis to suspect that we'll find evidence of misconduct What my client said is I want to search you because I think I think it will go well for you judge Amber I believe what you might be referring to is there was the IAB officer when he came back from interviewing. Mr. Artis Said that he believes that mr. Artis might be telling the truth But my clients that the IAB officers Mark sued my clients stated I don't think that you took the money and I want to demonstrate and I think if you if I search you things will go well for you And I think that's been consistent and what I tried to cite were only The plaintiffs depositions in the plaintiffs affidavits since we are on summary judgment So that we wouldn't have an issue as to what's disputed Any further questions If I may I'd also I'd also like to just get to the qualified immunity point real quick because we did We did raise qualified immunity in our answer. I believe the case law would say that Qualified immunity is not waived and this is a very strong case for qualified immunity because there is circuit law out there that would say that That if that there in fact, it's clearly established that there wasn't a seizure here And it's clearly established that the special needs doctrine applies in these cases and that the search was reasonable And so it's not clearly established under sufficiently similar factual circumstances that what my clients did here was a constitutional Violation and therefore if the court disagrees with me that there wasn't a constitutional violation at the very least My clients would be established to qualified immunity Entitled to call that immunity. Thank you very much. Thank you Mr. Trischelli I Noted to your respond that this band that there was Some evidence that there was a seizure, but it seems that there was a whole lot of evidence. There really wasn't a seizure That this was an internal disciplinary investigation They were not subjected to the usual formalities that would accompany a legal search I mean, you know, nobody would say oh you might help you if we turn out your pockets I showed you in good shape. They were not in the holding cell. They were just merely in the supervisor's office They were paid overtime for this They were permitted to make when was permitted to make a call to his wife and both officers Stated they remained in room because they were following orders not because there was any legal or physical force Your honors that the seizure that we're talking about you're saying they were paid overtime That was a factual dispute as the way they were paid. There was no dispute that the DAR was They pay for the additional for the additional time the two point the other shift the two hours They contended. No, we asked for the checks To show that they were all that was produced during discovery was a DAR daily attendance records. What do we know now? We all Were they paid they the city says that they have proof that they actually paid them They showed they showed that they were paid the DA only shows that were put in for the time Having doing this work. No, I were they they're your clients were they paid or not? They say this isn't no they say no and that's why I simply I'm telling us your clients were not paid That's what they're saying. Oh, what are you saying? I'm where they just show that were they paid or were they not? I mean, this is this is a this is not subject to Confusion or debate were they paid or not? For the overtime I can't say they were or weren't because all I asked for was objective evidence was the finance department So your answer is you don't know what I don't know. I only know that I got a DAR a daily attendance record. I Only know that my opponent says he had evidence and sent it to me and I told him I have no paycheck Well, you gotta show me it's from the finance department that he got paid and that issue is resolved that has never showed up Well, maybe we could ask for 28 J letters from the council on that because that does not seem to be a complicated analysis Either the checks were cut and they were paid or they weren't right and that's all I've ever asked for that evidence Okay. Now, can you cite any cases from any jurisdiction state or federal where officers were brought back to the station under? Similar circumstances where the court held there was a seizure for purposes of the Fourth Amendment No, because these special needs cases hasn't really fit into this area that what what they've done is a broadly struck the area and said we're going to allow a special needs area the Supreme Court and They said but to get to that special needs area. You're gonna have to show That you have a standard and if you don't go out inside the standard Meaning in this case, we have a standard We have a director seven director seven is clear in this area applies citizens and police It says if you do not have probable cause which is what the police department Decided he's as the standard. They're the law enforcement people here You need consent My client said they didn't gave it give it The defendant said that was a factual dispute if I apply just the law that the Supreme Court has decided for special needs situations. I have here a situation where The standard adopted by the public employer is either consent or probable cause True case law may have said they could have gone lower But they want to see the standard and it's clear even aquiline gave us all of those factors to look at and the defendants in this case rely heavily on aquiline and it says if You have intimidation If you have what they were trouble about not going to the bathroom. We don't have that here What we have is a confinement. They were not free to leave In fact, even when they were told to free they were free to leave at the end After 2.5 hours beyond their shift. They weren't allowed to go to their locker They were not free to move about that district. They were in fact Escorted out of the building. How do you respond to the qualified immunity argument the qualified immunity? Oh, yeah Look at the dribble case to people decided the qualified immunity case back in 2002 and said no The law was clearly established and that type of conduct the seizure Was illegal so if we're gonna rely heavily on dribble You better rely just as heavily on the qualified immunity case and that was years before this event Okay, thank you thank you to both counsel well presented arguments we'll take them